FILED
2012 Aug-03  PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARTIN R. CRUMPTON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | |
| | ] | 6:11-CV-02561-LSC |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.      Introduction

The Plaintiff, Martin Crumpton ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Crumpton was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a 12th grade education.  (Doc. 14 at 2.)  His past work experiences include employment as a pipe fitter helper, electrician, and

plumber. (Tr. at 22.) Plaintiff claims that he became disabled on June 24, 2007, due to mental illness and physical ailments, including bipolar disorder or major depression recurrent with psychotic features, anti-social personality disorder, anxiety, substance induced mood disorder, polysubstance abuse, seizure disorder, right shoulder pain, back pain, right knee pain, hip pain, mild chronic obstructive pulmonary disease, and ankle pain. (Doc. 13 at 2, Tr. at 17, 19.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled, and the evaluation stops. (*Id.*) If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. (*Id.*) The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to

step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled, and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*)

Applying the sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2010. (Tr. at 17.) The ALJ further determined that the plaintiff has not engaged in substantial

gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's bipolar disorder and personality disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in Subpart P, Appendix 1, Regulations No. 4. (Tr. at 19.) The ALJ did not find Mr. Crumpton's complaints to be totally credible, and the ALJ determined that he has the following residual functional capacity:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no climbing ladders, ropes scaffolds; frequent stooping, crouching, kneeling, or crawling; the need to avoid concentrated exposure to fumes and gases; the need to avoid all exposure to hazards such as machinery, heights, etc.; with the ability to understand and carry out simple instructions.

(Tr. at 20.) According to the ALJ, Mr. Crumpton is unable to perform any of his past relevant work, he is a "younger individual," has a "limited education," and is "able to communicate in English," as those terms are defined by the regulations. (Tr. at 22-23.) Considering the appellant's age, education, work experience, and residual functional capacity, the ALJ found that there are a significant number of jobs in the national economy that he is capable of performing, such as auto detailer, hand packer, or kitchen helper. (Tr. at 23.) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from

June 24, 2007 through the date of this decision." (Tr. at 24.)

II.     Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by

substantial evidence. *Miles*, 84 F.3d at 1400.

No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The review of the district court is of the record as a whole. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson*, 284 F.3d 1219, 1221.

III.    Discussion

Mr. Crumpton alleges that the ALJ's decision should be reversed for two reasons. First, Plaintiff claims that the ALJ erred in failing to discuss the evidence submitted by Plaintiff's attorney on September 17, 2009.[1] (Doc. 13 at 12.) Second, Plaintiff argues that the ALJ failed to develop the record. (Doc. 13 at 13.)

A. September 2009 Evidence

Plaintiff first alleges that the ALJ failed to discuss the entirety of the plaintiff's

---

[1] Crumpton's attorney submitted late records prior to the date of the ALJ's decision. The ALJ did not strike the additional records. Therefore it is assumed that the ALJ reviewed these records in making his determination.

medical records, specifically exhibits 21F and 22F.[2] (Doc. 13 at 12-13.)  Exhibit 21F

contains records from Plaintiff's visits to Walker Baptist Medical Center  in June of

2008 and May of 2009, which document Plaintiff's physical and mental complaints.

(Tr. at 397-423.) Exhibit 22F contains records from Dr. Kyle Brizendine, who treated

Plaintiff for his physical complaints at a UAB outpatient clinic. (Tr. at 425-41.)

Plaintiff argues that the ALJ's failure to specifically discuss all medical records,

particularly those contained in 21F and 22F, resulted in reversible error and requires

remand. (Doc. 13 at 1-15.)

The ALJ has a duty to make clear the weight accorded to each item of evidence

and the reasons for his decision in order to enable a reviewing court to determine

whether the decision was based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d

731, 735 (11th Cir. 1981). However, "there is no rigid requirement that the ALJ

specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1557 (11th Cir.

1995)). *Id.* The ALJ's decision need not be a "broad rejection which does not enable

this Court to conclude that the ALJ considered the claimant's medical conditions as

---

[2]While Plaintiff argues that the ALJ failed to consider exhibits 20-23F, only 21F and 22F
contain documents related the plaintiff's disability claim. Exhibits 20F and 23F are merely
introductory letters from the plaintiff's attorney to the ALJ.

a whole." *Id.*

While the specific Exhibits 21F and 22F were not cited within the ALJ's opinion, the underlying conditions outlined in 21F and 22F were documented in other portions of the record, and were mentioned in the ALJ's opinion. (Tr. at 17-24, 121-59.) In fact, the ALJ specifically stated that "[a]dditional medical evidence received (after the date of the state agency determination) in the course of developing the claimant's case for review at the administrative hearing level . . . justif[ies] a conclusion that the claimant's impairments are no more limiting than was concluded by the state examiners." (Tr. at 22.)

The plaintiff specifically complains that the ALJ did not consider the May 2009 psychiatric admission documents, contained in exhibit 21F. (Doc. 13 at 12.) Plaintiff asserts that these documents are "very helpful to the claimant," and show that the plaintiff "verbalized suicidal ideation, intense auditory hallucinations, isolation, and no pleasure in life, and depressed mood [sic]." (Doc. 13 at 12, Tr. at 398-40.) However, the ALJ considered the symptoms complained of in these records, and specifically mentioned them in his opinion.

The ALJ found that the plaintiff's mental impairments of bipolar disorder and personality disorder do not meet or medically equal the criteria of listings 12.04 and

12.08. (Tr. at 19.) The ALJ further found that the plaintiff's affective, personality, and substance addiction disorders resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintiaining concentration, persistence or pace. (Tr. at 22.) The ALJ took these limitations into consideration in determining the plaintiff's RFC. (Tr. at 23.)

In making his determination, the ALJ considered that the Plaintiff was non-compliant with mental health treatment. (Tr. at 18, 19.) *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (claimant is required to be compliant with treatment in order to receive disability benefits). Plaintiff did not go to his therapy sessions, and the Walker Baptist Medical Center noted after his November 13, 2007, visit that he "said he had been sent by his attorney to get his disability" and that he "was not invested in his treatment and clearly had secondary gain as the motivation and driving force for his hospitalization." (Tr. at 19.)

The plaintiff alleges that the evidence contained in exhibit 21F refutes the ALJ's contention that the plaintiff's mental condition is not as severe as the plaintiff alleges. (Doc. 13 at 12.) However, the evidence in exhibit 21F is consistent with the ALJ's RFC finding. When Dr. Vansickle asked the plaintiff why he wanted to be voluntarily admitted to the Walker Baptist Medical Center in May of 2009 , the

plaintiff stated, "I have been stressed." (Tr. at 400.) Dr. Vansickle stated he did not see any evidence supporting Plaintiff's claims of psychotic episodes and hallucinations. (Tr. at 399.) During the first couple of days after his admission, Plaintiff reported continued depression, but no suicidal ideation. (*Id*.) After a few days in the hospital of taking medications, Plaintiff smiled, interacted well with people, became well kept, and denied anxiety and depression upon release from the hospital. (Tr. at 399.) Thus, the ALJ did not err by failing to specifically address the records in exhibit 21F, as they merely provided further support to the ALJ's determination.

Plaintiff also argues that it does not appear that the ALJ considered the evidence in exhibit 22F, which documents Dr. Brizendine's treatment of the plaintiff for pain and seizures. (Doc. 13 at 12, Tr. at 425-41.) Again, the evidence contained in 22F simply lends further support to the ALJ's determination of non-disability.

The ALJ found that the evidence failed to establish any significant functional limitations from physical or exertional impairments. (Tr. at 19.) Although the plaintiff claims to suffer from seizure disorder, the ALJ stated that there was no clinical laboratory evidence of a seizure disorder. (Tr. at 19.) Following a motor vehicle accident where Plaintiff passed out while driving and had a head-on collision with a

wall, Dr. Jay Smith gave the plaintiff an EEG. (Tr. at 145.) Dr. Smith noted that the EEG was abnormal, which would be compatible with the plaintiff's recent head injury, but wasn't specific for that diagnosis. (*Id.*) He further noted that "no epileptiform markers are identified to suggest an underlying seizure focus, however, absence of such activity does not exclude an ongoing risk for recurrent seizures." (*Id.*) Dr. Smith also wrote that Plaintiff never had a formal diagnosis of seizures. (Tr. at 121.)

The evidence contained in exhibit 22F shows that Dr. Brizendine, who is a non-specialist, prescribed medicine to the plaintiff for generalized seizures.  (Tr. at 429.) Dr. Brizendine considered Plaintiff's pain following his car accident, and wrote: "[t]oday his right ankle is painful.  He has been discharged from the orthopedic surgery team that was following him and told basically it was healed and that he was going to have pain and arthritis that he would have to deal with." (Tr. at 425.)  Dr. Brizendine prescribed prescription pain medication and physical therapy.  (Tr. at 426.) With regard to the severity of the pain, Dr. Brizendine did not indicate that the plaintiff would still have any pain if he complied with therapy. (*Id.*) There is no other evidence anywhere in the record that the plaintiff followed Dr. Brizendine's recommendation of physical therapy. Dr. Brizendine never made any statements regarding whether Plaintiff's pain was severe or whether he could work. The ALJ

found that Plaintiff's subjective complaints of pain were not credible. (Tr. at 21-22.) Thus, the ALJ's failure to specifically mention Dr. Brizendine did not cause any error, as it further supported the RFC finding of non physical limitations.

Plaintiff argues that the Appeals Council's denial of review was improper. However, because there was no new evidence submitted, denial of review was appropriate. As discussed previously, the materials submitted to the ALJ after the date of the hearing were included in the record. (Tr. at 397-42.) "When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner . . . ." *See also* 20 C.F.R. § 422.210(a).

B. Failure to Develop the Record

Plaintiff argues, "[i]f the ALJ still had any doubts about the severity of the claimant's mental condition after reviewing the additional medical records submitted by the claimant's attorney in September, 2009, he should have ordered a further consultative mental exam." (Doc. 13 at 13). "It is well established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Pursuant to 20 C.F.R. § 404.1512(d), the Commissioner is obligated to "develop [the claimant's] complete medical history for at least the 12 months

preceding the month in which [the claimant] file[s][her] application." On the other hand, "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." *Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. § 404.1512(a),(c)). Also, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). In *Wilson*, the court held that the ALJ was not obligated to seek "additional expert medical testimony" because "the record, which included the opinions of several physicians including [those] who treated [the plaintiff], was sufficient for a decision and additional expert testimony was unnecessary." (*Id.*)

As discussed previously, 21F and 22F support the ALJ's determination. In addition, the record as a whole contains more than sufficient evidence to support the ALJ's decision, without the need for another psychological exam. The record contains Plaintiff's many hospitalizations, a consultative psychological exam, a psychiatric evaluation, as well as visits to psychiatrists, medical doctors, and a mental health clinic. (Tr. at 1-443.)

C.     Conclusion

Upon review of the administrative record, and considering all of Mr.

Crumpton's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this $\underline{3^{rd}}$ day of $\underline{August\ 2012}$.

L. Scott Coogler
United States District Judge

167458